FREDERICK D. ROOT, ET UX.
*vs.*
KATE CORSO, ET AL.

:Superior Court New Haven County File No. 55280

MEMORANDUM FILED NOVEMBER 24, 1939.

*Samuel H. Platcow,* of New Haven, for the Plaintiffs.

*Joseph Weiner,* of New Haven, for the Defendants.

FOSTER, J. Campbell Avenue, in the Town of West Haven, runs north and south and is intersected by Leete Street running east and west. The defendant, Kate Corso, owns land on the southwest corner of Campbell Avenue and Leete Street, being 50 feet on Campbell Avenue and more than 50 feet at its westerly boundary and 117 feet on Leete Street. Immediately west of the land of this defendant is located land owned by the plaintiffs. The defendant, Nicholas Corso, is the husband and agent of the defendant, Kate Corso, and is the defendant really interested in this action; so, in speaking of the defendant here-after, I shall refer to Nicholas Corso. On the land of the defend-ant is a one-family dwelling house, facing Campbell Avenue, occupied by Louis Esposito, who is in the employ of Nicholas Corso, and whose wife is a sister of Kate Corso. A few feet west of this dwelling house is a building facing Leete Street, having brick walls and frame roof construction, the dimensions of which are 34 feet nine inches from east to west and 50 feet from north to south. The west wall of this building is 15 feet east of the westerly boundary of the land. On the land of the plaintiffs is a two-family dwelling house, the east wall of which is three feet west of the easterly boundary line. The plaintiffs occupy the upper floor of this building and rent the lower floor to a family. The location of these buildings is well portrayed in the photographs Exhibits A and B, which show parts of the plaintiffs' building and the brick and frame structure, and Exhibit C, which shows parts of the dwelling house owned by the defendant and the brick and frame structure.

This action concerns the erection, maintenance and use by the defendant of the brick and frame structure.

For many years the defendant has been in the business of buying and selling at wholesale bananas. In 1935 he was the owner of other property in West Haven, where he conducted this business and found it necessary to have more space for the storage of bananas and the storage and parking of his numerous trucks. He selected a site and was told by the town authorities that the site he had selected was in such a zone that it would be impossible for him to use such site in his business. We follow the action of the defendant in detail, for thus is shed light on his credibility. We start with the fact that according

to the testimony of the defendant himself in 1935 he desired to erect not a garage but a storage place for trucks and bananas. In his business the defendant sends a large truck to New York several times a week—sometimes to Philadelphia or Boston— and brings in a load of green bananas. It requires about five days for these green bananas to ripen and turn yellow, so that they are in proper condition for distribution by him in the smaller trucks to the local trade in Connecticut. During this period of five days, by means of a gas burner at certain times of the year and by means of cool air at other times of the year, the bananas hung in the building are rendered fit for sale and consumption.

Having purchased the land with the dwelling house upon it at the southwest corner of Campbell Avenue and Leete Street, the defendant made application to the Building Department of West Haven for permission to build a "three-car brick garage" to be located at 216 Campbell Avenue, the address of the dwelling house on his land. He did not ask for permission to build a building for storage of bananas and trucks. He gave the address as Campbell Avenue, not Leete Street, upon which latter street the building was to have faced. Campbell Avenue and Leete Street for a distance of 100 feet west of Campbell Avenue are in a business zone, while Leete Street west of a point 100 feet west of Campbell Avenue is in a residence "B" zone. On June 10, 1935, such a permit was issued. The building when erected encroached nine feet to ten feet over the line dividing such two zones. According to the generally accepted line of Campbell Avenue, such encroachment was four feet to five feet. On August 12, 1936, the defendant applied to the Building Department of West Haven for permission to erect "three rooms which is used for air-conditioning." The application was not for permission to erect three rooms for the storage and conditioning of bananas. On August 13, 1936, permission was granted in the words "three rooms may be partitioned off for air-conditioning." On June 2, 1937, the defendant applied to the Building Department of West Haven for permission to erect a "room inside garage for air-conditioning." Upon the application appear the words "The above room does not encroach on the residential part." Such permission was granted. Later a partition was erected forming a fourth room. Two of these rooms are on the south side of the garage, and their dimensions are about fourteen feet by fourteen feet. The third and fourth rooms are on the west side of the garage and about three

feet east of the west wall thereof. There appears no permission for the erection or forming of the fourth room, but it was apparently made by erecting a partition through the third room so-called. Hooks are screwed into the ceiling of these four rooms; cords are attached to the bunches of bananas; and the latter are thus suspended from the hooks. There is artificial heat in each room that can be used when desired. Outside the rooms in the main body of the garage are three motors respectively $1\frac{1}{2}$, $1\frac{1}{2}$ and 1 horse power, each connected with apparatus in one of the rooms so that cool air may be introduced into such a room. In the fourth room is a large electric fan, which is operated over cakes of ice for cooling the air in the room. In the main part of the garage is space sufficient for the storage or parking of two trucks.

The plaintiffs claim that two large trucks, one eight and one-half tons and one seven and one-half tons, leave the garage at very early hours in the morning; that these two large trucks return at all hours of the night and early in the morning loaded with bananas; that as they are backing into the garage there is much loud shouting and talking by the defendant and his employees; that such loud conversation continues while the bananas are being transferred from the trucks to the storage rooms; that the trucks are sometimes left parked in the street; that the motors used for cooling the rooms make much noise. Plaintiffs also make claims relative to the disposal of banana stalks and the drying of blankets and the dripping of oil on the street, all of which I disregard because such conditions occurred at infrequent times.

The defendant admits that he is the owner of several trucks that he uses in his business; that in this garage he stores the eight and one-half ton van truck and the two ton Reo van truck; that the rooms in the garage have a capacity for 800 to 850 bunches of bananas; that the eight and one-half ton truck has a capacity for 500 bunches of bananas; that Esposito drives the large truck to New York two or three times a week, leaving at 5:30 to 7 a.m. and returning at 6 to 10 p.m. with loads of bananas; that when these loads arrive the truck is backed into the garage, there unloaded by three or four men, cords tied to the stalks of the bananas and the same hung up in the rooms; that when the bananas arrive they are green; that in about five days they become yellow and ripe; that to be most fit for human consumption they must be kept in a temperature of about 60 degrees while so ripening; that the artificial heat and the three

motors are used for this purpose; that about 7 a.m. each day the plaintiff loads the two ton truck with ripe bananas and carries them to retailers of the fruit. The defendant claims that there is never any loud shouting or talking about the place; that the trucks make no noise; that the motors inside the garage make no noise.

The building is not an accessory to the dwelling house on the premises. Rather is the dwelling house an accessory to the building. The dwelling house faces Campbell Avenue; the building faces Leete Street; the building is used solely by the defendant; the dwelling house is occupied by the defendant's brother-in-law, an employee and driver of the eight and one-half ton truck.

The plaintiffs make two claims as to the building and its use: (1) that the erection of the building and its use are contrary to the building zone regulations and so contrary to law; (2) that the use of the building constitutes a nuisance.

It is conceded that four to five feet of the building is in a residence zone. It is even conceded, and I find as a fact, that nine to ten feet of the building is in a residence zone. If this garage be an accessory to the dwelling house on the same lot—which is a view favorable to the defendant—then it is subject to the zoning ordinances affecting accessory buildings in residence zones.

"Section VIII. Location of accessory building in residence zones. Subsection 3. In the case of a corner lot fronting upon two streets, no accessory building shall be erected or altered so as to encroach upon that area between each residential street and a line drawn parallel to such street in a manner to divide the lot into two equal parts."

It follows that so much of the building as is in a residence zone was erected and is used in violation of the zoning ordinances.

"Section IV. Regulations controlling business zones. In a business zone no building or premises shall be used and no building shall be erected which is arranged, intended or designed to be used for any of the following specified trades, industries or uses: 6. Carting, express, hauling or storage; 19. Any kind of manufacturing or treatment other than the manufacture of products clearly incidental to the conduct of a retail business conducted on the premises."

There can be no doubt that this building is used by the defendant for carting and for hauling; the bananas are carted and hauled to and from the building. It may be said that the hauling and carting are done in trucks, but the building is plainly accessory to such carting and hauling.

The bananas are carted and hauled to the building in a green, non-edible condition. They are there hung in bunches and treated at times with warm air and at other times with cool air. The defendant testifies that this treatment is not applied for the purpose of ripening the bananas but for the purpose of rendering them edible and wholesome; to use his words, "They would otherwise ripen but would be mushy." The defendant cites cases relative to ice and wood, where the treatment does not change the article but preserves it. Here a change in the banana is created by means of treatment; it is changed from a non-edible product to an edible, wholesome product. If the banana were permitted to ripen without the application of warm or cool air applied by one having skill and knowledge as to the treatment of bananas, it would not be edible and wholesome as it becomes upon the application of such treatment.

I find that the defendant is using this building in a manner contrary to law. I find that in his use of the building the defendant brings large trucks loaded with bananas to the building at various hours late into the night after the plaintiffs have retired for sleep and rest; the large trucks leave the building at early hours of the morning before the plaintiffs have arisen from their night's rest and awaken and disturb the plaintiffs; that these arrivals and departures occur several times a week throughout the year; that during the daytime small trucks leave and return to the building; that the arrival and departure and unloading and loading of the trucks is accompanied by loud talking and conversation of three to five men which is of a nature to disturb the plaintiffs in the quiet and peaceful occupation, use and enjoyment of their home. I find that the operation of the motors on the trucks and the operation of the three motors used for treating the bananas in the building cause noise that disturbs the quiet and peace of the plaintiffs in their use of their home. These facts are found from the testimony offered in the trial of the case and also from personal inspection and observation of the premises. I find that the defendant is maintaining a nuisance upon his property. *Fitzgerald vs. Merard Holding Co.*, 106 Conn. 475; *Fitzgerald vs. Merard*

*Holding Co., Inc.,* 110 id. 130; *State vs. Kievman,* 116 id. 458.

The issues are found in favor of the plaintiffs against the defendants.

An injunction may issue that the defendants be restrained from use of the garage (so-called) on their premises at the southwest corner of Campbell Avenue and Leete Street in West Haven for the purpose of carting, hauling and treating bananas and from using for purposes prohibited in residence zones by the zoning regulations of the Town of West Haven the westerly nine feet of such building; all under a penalty of three thousand dollars.

The plaintiffs claim monetary damages. They have proved no such damages liquidated up to the present time. Any recoverable damage that the plaintiffs may anticipate will be eliminated by the granting of the injunction.

. An order of injunction may be prepared by counsel for the plaintiffs and submitted to the court for approval.